**SANDEFER OIL & GAS, INC.,**
**Plaintiff–Appellant,**

v.

**AIG OIL RIG OF TEXAS INC., et al.,**
**Defendants–Appellees.**

No. 87–4491.

United States Court of Appeals,
Fifth Circuit.

June 6, 1988.

---

Richard L. Lagarde, Fisher, Gallagher, Perrin & Lewis, Houston, Tex., for plaintiff-appellant.

Harold K. Watson, Jane Militello, Liddell, Sapp & Zivley, Houston, Tex., for defendants-appellees.

Before WISDOM, REAVLEY, and JOLLY, Circuit Judges.

WISDOM, Circuit Judge:

This appeal presents a choice of law question: is the interpretation of certain insurance contract notice provisions governed by Louisiana law or Texas law? The district court held that Texas law applied, and the court granted the defendants' motion for summary judgment because the plaintiff-insured, under Texas law, failed to give the defendants reasonably prompt notice of its losses. We apply Louisiana choice of law principles and Texas insurance law, and we find no error in the district court's judgment.

## I. FACTS AND PRIOR PROCEEDINGS

Between 1980 and 1984 Sandefer Oil & Gas, Inc., an oil and gas exploration company, obtained insurance policies for various oilfield risks. The policies were obtained through Sandefer's broker, the Houston office of Marsh & McLennan, Inc., and were delivered by the broker to Sandefer in Houston. In July 1985 Sandefer submitted six claims under these policies. Three of the claims, which are the subject of this lawsuit, arose in Louisiana; the others arose in Texas and Oklahoma. The losses for which Sandefer sought coverage occurred in 1982 and 1983. The claims were denied because of Sandefer's failure to give reasonably prompt notice of the losses.[1]

Sandefer contends that its delay in submitting notices of loss was excusable, because it was unaware that such losses were covered by the policies. Sandefer sought coverage for underground blowouts or uncontrolled subsurface flows. Although some oilfield risk policies provide coverage only for above ground blowouts, the policies in this case were amended to provide coverage for costs related to *any* "out of control" well.[2] Sandefer admits contempo-

---

1. The insurance policies contained the following or similar provisions: "The Assured upon knowledge of an accident or occurrence likely to give rise to a claim hereunder, shall give, as soon as practicable, immediate written notice thereof to the AIG Oil Rig of Texas, Inc., 220 North Loop West, Houston, Texas 77018."

2. The amendment was accomplished by crossing out language in the provision that defined an "out of control well" as follows: "A well shall be deemed out of control when there is a continuous flow of drilling fluid, oil, gas, or water ~~above the surface of the ground (or the water~~

raneous knowledge of the subsurface blow-outs, but Sandefer contends that it filed the notices of loss as soon as practicable, that is, after discovery of coverage for the blow-outs.

Sandefer filed two suits, one in Louisiana and one in Texas. This suit was filed in Louisiana state court and was removed to federal court under diversity jurisdiction. Sandefer is a Texas corporation. The defendant insurance companies are domiciled in New Hampshire, New York, Canada, Norway, and Sweden.[3] The Texas suit was stayed pending resolution of this case.

The district court, upon the recommendation of a magistrate, granted the defendants' motion for summary judgment. The magistrate determined that Texas law governed this case and that Texas law barred recovery because of the plaintiff's unreasonable delay in filing its notices of loss. The plaintiff appeals, challenging both of the magistrate's determinations.

## II. THE CONFLICT OF LAWS

In this case there is a conflict of laws. The plaintiff argues that Louisiana law determines the reasonableness of the plaintiff's notices of loss. Under Louisiana law, the insurer cannot escape liability because of the insured's failure to give notice of loss as soon as practicable; to avoid coverage the insurer must demonstrate prejudice caused by the insured's delay.[4] The defendants counter that Texas law governs, and under Texas law "the failure of the insured to give notice 'as soon as practicable' is a valid defense under the policy,

regardless of whether any loss or damage to the insurer resulted from the delay".[5] The magistrate correctly recommended to the district court that in this diversity case the court is bound to follow the conflicts of law principles of the forum state,[6] Louisiana.

Both the plaintiff and defendants argue that a literal application of Louisiana Civil Code article 15 [7] solves this choice of law problem. The defendants argue that Texas law governs because these contracts were executed in Texas, and article 15 states: "The form and effect of public and private written instruments are governed by the laws and usages of the places where they are passed or executed." The plaintiff points out, however, that the insurance policies provide coverage for risks located in Louisiana. The plaintiff argues that these Louisiana "effects" mandate the application of Louisiana law, because article 15 also provides that "the effect of acts passed in one country to have effect in another country, is regulated by the laws of the country where such acts are to have effect".

When applying Louisiana conflicts of law principles, this Court has noted that article 15 is not to be applied literally.[8] Article 15 begs the question. If only the state where the contract was executed has an interest, then that state's law is to be applied. When does that state have such an exclusive interest; when does the contract have "effects" in Louisiana? The answer to this question can be found only by using Louisiana's choice of law interest analysis.[9]

bottom in the case of a well(s) located in water) which is uncontrollable.

**3.** The plaintiff also joined AIG Oil Rig of Texas, Inc. as a defendant. AIG served as an agent for three of the defendant insurance companies, and upon removal the other defendants argued that the joinder of AIG, a Texas resident, was a fraudulent attempt to defeat diversity jurisdiction. The plaintiff did not challenge this argument.

**4.** *West v. Monroe Bakery, Inc.,* 217 La. 189, 46 So.2d 122 (1950).

**5.** *Kellum v. Pacific Nat'l Fire Ins. Co.,* 360 S.W. 2d 538, 542 (Tex.Ct.App.—Dallas 1962) (citing

*New Amsterdam Cas. Co. v. Hamblen,* 144 Tex. 306, 190 S.W.2d 56 (1945)).

**6.** *Klaxon Co. v. Stentor Elec. Mfg. Co., Inc.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941).

**7.** La.Civ.Code Ann. art. 15 (West Supp.1988) (formerly article 10).

**8.** *See Lee v. Hunt,* 631 F.2d 1171, 1175–76 (5th Cir.1980).

**9.** This rationale is the one way to reconcile the cases that have considered the conformity of article 15 with Louisiana's modern approach to conflicts of law problems. *See, e.g., Bell v. State Farm Mut. Auto. Ins. Co.,* 680 F.2d 435 (5th

In *Jagers v. Royal Indemnity Co.*,[10] the Louisiana Supreme Court adopted a new method for resolving Louisiana choice of law problems, but the court was ambiguous in its choice of "interest analysis". As Professor Couch has noted,[11] the court cited both Professor Brainerd Currie's governmental interest analysis [12] and the *Second Restatement*'s "most significant relationship" approach.[13] Although some confusion remains,[14] a close examination of the *Jagers* opinion and subsequent Louisiana and federal cases suggests that Louisiana's choice of law approach is a combination of the Currie and *Second Restatement* methods.

Judge Rubin carefully summarized the Louisiana choice of law approach in *Ardoyno v. Kyzar*.[15] The court must first decide, using Currie's analysis, whether a false or true conflict exists. If there is a false conflict, the court must apply the law of the interested jurisdiction. In a true conflict case, the court uses the *Second Restatement*'s method to determine the applicable law.

## A. Currie's Analysis of True and False Conflicts

Professor Currie's interest analysis examines the policies of each states' laws.[16] If the state's relationship to the dispute is within the scope of the state's policy, then the state has a legitimate "interest" in the application of its law to resolve the dispute. In a conflict between two states, if each state has such an interest, then a true conflict exists; whereas if only one state has an interest, a false conflict exists. The unprovided-for case, under Currie's analysis, is where neither state has an interest.

The plaintiff contends that Louisiana has an interest in this case under the reasoning of *Champion v. Panel Era Mfg. Co.*[17] In *Champion* the court was faced with a very similar choice between Texas and Louisiana law. The issue was whether an insured's failure to give prompt notice of a suit voided coverage. The court found that the following state laws were implicated:

> Under Texas law, the failure to perform the condition of giving notice of the claim to the insurer as soon as practicable constitutes an absolute defense to coverage,

Cir.1982); *Richard v. Beacon Nat'l Ins. Co.*, 442 So.2d 875 (La.Ct.App. 3d Cir.1983); *Wickham v. Prudential Ins. Co.*, 366 So.2d 951 (La.Ct.App. 1st Cir.1978). *But cf. Shaw v. Ferguson*, 437 So.2d 319 (La.Ct.App. 2d Cir.1983) (where the court considered the conformity of article 3532 with Louisiana's interest analysis). In *Bell* Judge Tate interpreted article 15 in accordance with Louisiana's newly adopted interest analysis, recognizing that the same article previously had been interpreted in accordance with the *lex loci contractus* rule. 680 F.2d at 436–37. In a false conflict situation, the court in *Richard* applied the law of Texas, the state where the contract was executed. Although the cause of action arose in Louisiana, which means the insurance contract at issue arguably had "effects" in Louisiana, the *Richard* court applied the first paragraph of article 15 literally, perhaps because only Texas had an interest in the dispute—both parties were residents of Texas. 442 So.2d at 875–76. In *Wickham* the court implied that article 15 was nullified by Louisiana's new choice of law approach, but one judge registered a sharp dissent. 366 So.2d at 954.

10. 276 So.2d 309, 311 (La.1973).

11. Couch, *Louisiana Adopts Interest Analysis: Applause and Some Observations*, 49 Tul.L.Rev. 1, 3 (1974). *See also* Note, 48 Tul.L.Rev. 149,

153 (1973) (criticizing the *Jagers* court's failure to articulate fully its analysis).

12. *See generally* B. Currie, *Selected Essays on the Conflict of Laws* (1963).

13. *Restatement (Second) of Conflict of Laws* § 6 (1971); *see also* R. Leflar, L. McDougal & R. Felix, *Cases and Materials on American Conflicts Law* 320–21 (1982).

14. Several courts faced with Louisiana choice of law problems cited only the *Second Restatement* as a source for guidance. *See Burbank v. Ford Motor Co.*, 703 F.2d 865 (5th Cir.1983); *Brinkley & West, Inc. v. Foremost Ins. Co.*, 499 F.2d 928 (5th Cir.1974); *Burns v. Holiday Travels, Inc.*, 459 So.2d 666 (La.Ct.App. 4th Cir.1984). But other courts have employed interest analysis without reference to the *Second Restatement*. *See, e.g., Hanzo v. Liberty Mut. Ins. Co.*, 508 So.2d 928 (La.Ct.App. 4th Cir.1987). *See also* E. Scoles & P. Hay, *Conflict of Laws* § 18.21, at 667–68 (1982) (noting the unsettled state of Louisiana's conflicts of law rules).

15. 426 F.Supp. 78, 80–81 (E.D.La.1976).

16. *See* B. Currie, *supra* note 12, at 189. *See also* R. Leflar, L. McDougal & R. Felix, *supra* note 13, at 314.

17. 410 So.2d 1230 (La.Ct.App. 3d Cir.1982).

absent a waiver or other special circumstances. Breach of the condition voids policy coverage.... The rule in Louisiana is that an insurer must prove actual prejudice in order to deny a claim on the basis of not receiving notification as stipulated in the policy contract.[18]

Three parties were involved in the controversy: a Texas insurer, a Texas insured, and a Louisiana injured plaintiff suing under a direct action statute. The court found that Louisiana's law was designed "to prevent insurers from using the notice requirement to evade the fundamental protective purpose of the insurance contract and to assure payment of liability claims up to the policy limits for which they collected premiums".[19] Louisiana had a legitimate interest, because its resident, the injured plaintiff suing under the direct action statute, was protected by the Louisiana policy.

In this case Louisiana law serves the same policy, but no Louisiana residents are involved. The injured party is the insured, Sandefer, a Texas resident. The losses for which coverage is sought occurred in Louisiana, but there is no evidence that any resident of Louisiana will be affected by a denial of coverage. These policies provided reimbursement for expenses already incurred by Sandefer. The plaintiff contends that Louisiana has an interest in keeping its oil wells operating so that the state can collect tax revenues, but there is no showing that Louisiana's general policy enunciated in *West v. Monroe Bakery*[20] was designed to promote such a special interest. The plaintiff was also free to use its insurance proceeds in states other than Louisiana. Louisiana does not have an interest in this case.

The defendants argue that Texas is the only state with an interest in applying its law, but this argument is similarly flawed.

Texas allows insurers to require immediate notices of loss to protect *Texas* insurers from having to pay stale claims, which are much more difficult to investigate and value. None of the defendant insurance companies in this case, however, are domiciled in Texas. Texas does not have an interest in this case. This analysis, therefore, results in the unprovided for case under Currie's analysis, where neither state has an interest.

The defendants could argue that the law of Texas is designed to protect any insurance company doing business in Texas, but the plaintiff could make the same argument for the Louisiana law because the plaintiff does business in Louisiana.[21] If we assume that Texas's policy protects nonresident insurers doing business in Texas, then we must assume that Louisiana's policy protects nonresident insureds doing business in Louisiana. This analysis presents a true conflict.[22]

This case presents either a true conflict or the unprovided for case under Currie's analysis, where neither Louisiana nor Texas has a legitimate interest in the application of its law, but we need not choose one analysis over another. If this case presents a true conflict, we must look next to the *Second Restatement* to resolve the conflict. Although no Louisiana court has considered a case where neither state has an interest, *Jagers* and its progeny clearly suggest that in such a case a court also should use the *Second Restatement*'s "center of gravity" test to determine the applicable law. Under the reasoning of *Jagers* and *Ardoyno*, Currie's analysis is useful only when one state has an interest in a lawsuit. Otherwise, the Court should use the *Second Restatement*'s method, whether both states have an interest or

---

**18.** 410 So.2d at 1236 (citations omitted).

**19.** *Id.,* at 1237.

**20.** 217 La. 189, 46 So.2d 122 (1950).

**21.** In dictum the *Champion* court stated that Louisiana's law was designed to protect "Louisiana plaintiffs and the general public". 410 So. 2d at 1237. This broad interpretation is, however, inconsistent with the same court's later opinion in *Richard,* 442 So.2d 875.

**22.** Such a broad interpretation of each state's policy perhaps yields an "apparent conflict". Professor Currie urged courts to use a "moderate and restrained interpretation" to avoid such conflicts. R. Leflar, L. McDougal & R. Felix, *supra* note 13, at 314.

neither state has an interest.[23] We must, therefore, now look to the *Second Restatement* to resolve this case.

### B. *The Second Restatement's "Center of Gravity" or "Most Significant Relationship" Test*

The plaintiff contends that section 193 of the *Second Restatement* requires the application of Louisiana law in this case, because the insured risk was located in Louisiana. Section 193 states:

> The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.[24]

Although section 193 clearly was intended to apply to this type of legal question,[25] there is a problem with the plaintiff's argument. It is not clear that the insured risk in this case has a "principal location" within the meaning of section 193. Indeed, the defendants persuasively argue that these insurance policies provided coverage without regard to the location of the risks; location was not a matter of the parties' understanding.

Section 193 is inapplicable here because the insured risk was located in various states: Texas, Oklahoma, and Louisiana. Comment (b) to section 193 states that "[t]he location of the insured risk will be given greater weight than any other single contact in determining the state of the applicable law provided that the risk can be located, at least principally, in a single state. Situations where this cannot be done, and where the location of the risk has less significance, include ... where the policy covers a group of risks that are scattered throughout two or more states".[26] According to comment (a), in such a case "the location of the risk can play little role in the determination of the applicable law. The law governing insurance contracts of this latter sort must be determined in accordance with the principles set forth in § 188."[27]

Section 188 directs the Court to consider the following contacts:

(a) the place of contracting,

(b) the place of negotiation of the contract,

(c) the place of performance,

(d) the location of the subject matter of the contract, and

(e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

> These contacts are to be evaluated according to their relative importance with respect to the particular issue.[28]

The contacts in subsections (a), (b), and (c) are centered in Texas. The contacts in subsections (d) and (e) are not centered anywhere because the wells are located in three different states, and the parties have different residences.

When one evaluates these contacts "according to their relative importance with respect to the particular issue," Texas is the center of gravity. The place of contracting, negotiation, and performance are the most relevant contacts with respect to the notice procedures. When an insured

---

**23.** It is interesting to note the difference between the Louisiana and Currie approach to most conflicts. Professor Currie's preference was to apply the forum's law in all but exceptional cases, *i.e.,* false conflicts. *See* B. Currie, *supra* note 12, at 119. *Ardoyno,* 426 F.Supp. at 80 n. 2. Louisiana, on the other hand, uses the *Second Restatement* method, which emphasizes contacts, in all cases except false conflicts.

**24.** *Restatement (Second) of Conflict of Laws* § 193 (1971).

**25.** Comment (a) includes the following question within the scope of section 193: "whether the company is released from liability by reason of the insured's failure to give it prompt notice of the accident". *Id.* comment a, at 610.

**26.** *Id.,* comment b, at 611–12.

**27.** *Id.,* comment a, at 610.

**28.** *Id.* § 188(2).

risk occurred, notice was to be given in Texas, to a Texas agent, and by the plaintiff, a Texas resident. Presumably, payment of insurance proceeds was also to occur in Texas at the plaintiff's place of business. Furthermore, subsection (3) of section 188 states that "[i]f the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied".[29] Texas law applies.

## III. THE PLAINTIFF'S FAILURE TO GIVE PROMPT NOTICE OF LOSS

█ The plaintiff argues that even under Texas law its late notices of loss were excusable because it was unaware that such losses were covered under the policy. The district court was correct, however, in granting the defendant's motion for summary judgment because "lack of knowledge of coverage and lack of knowledge that a claim could be made are not good excuses, *as a matter of law,* for complying with the provisions of the policy concerning notice".[30] When the plaintiff knew of its loss, notice should have been given to the defendants within a reasonable amount of time, not two years later.

## IV. CONCLUSION

Under Louisiana's choice of law interest analysis, the notice provisions of the insurance contracts in this case are governed by Texas law, and Texas law bars the plaintiff's claim. The plaintiff failed to give the insurers prompt notices of loss. The district court was correct both in its application of Texas law and in its judgment that the plaintiff's claim is barred as a matter of law. Accordingly, the district court's judgment is AFFIRMED.

---

**29.** *Id.* § 188(3).

**30.** *Kellum v. Pacific Nat'l Fire Ins. Co.,* 360 S.W. 2d 538, 542 (Tex.Civ.App.—Dallas 1962) (emphasis added).