**Wiley FALLON, Plaintiff,**

v.

**SUPERIOR CHAIRCRAFT CORPORATION, Defendant–Third Party Plaintiff–Appellant,**

v.

**The RELIANCE INSURANCE CO., Third Party Defendant–Appellee.**

No. 89–4326
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Sept. 26, 1989.

David F. Butterfield, Mayer, Smith & Roberts, Shreveport, La., for defendant-third party plaintiff-appellant.

James B. Gardner, Lunn, Irion, Johnson, Salley & Carlisle, Shreveport, La., for third party defendant-appellee.

Before WILLIAMS, JOLLY and DUHE, Circuit Judges.

PER CURIAM:

AFFIRMED on the basis of the district court's opinion, which is attached as Appendix A.

## APPENDIX A

In the United States District Court for

the Western District of Louisiana

Shreveport Division

WILEY FALLON

v.

SUPERIOR CHAIRCRAFT

Civ. A. No. 86–3376.

MEMORANDUM RULING

Wiley Fallon, a citizen of Louisiana, has brought this action seeking damages for injuries allegedly sustained when he sat on a chair manufactured by Superior Chaircraft (hereinafter, "Superior"). The chair, similar to a post-mounted drafting stool with a flat, upholstered plywood seat, allegedly split from the front to the rear, dropping plaintiff on the floor. Superior has filed a third party demand against Lineager, Reliance Insurance Company, AFIA Worldwide Insurance and CIGNA. Superior contends that it did not manufacture the chair, but rather that it was designed, manufactured, boxed and shipped to them by Lineager and that Reliance, AFIA and/or CIGNA are the liability insurers of Lineager. Lineager is a foreign corporation domiciled in Milan, Italy—Lineager's alleged insurers are also foreign entities. Presently before the court are motions for summary judgment filed by the third party defendants and a counter-motion for summary judgment filed by Superior. The motion for summary judgment filed on behalf of CIGNA is unopposed.

STATEMENT OF FACTS:

The documentation submitted in support of the motions for summary judgment, though scanty, establishes many undisputed facts. Specifically, on August 14, 1985, plaintiff ordered a chair from Wordtec of Louisiana, Inc. (hereinafter "Wordtec"), an office supply company in Bossier City, Louisiana. Wordtec ordered the chair from S.P. Richards Company, a supplier in Dallas, who had obtained the chair from Superior. Superior acquired the chair from Lineager. The chair was shipped from Italy to Superior's principal place of business in Belton, Texas. All dealings between Superior and Lineager or its representative have been outside of the State of Louisiana.

On March 6, 1984, Reliance issued a liability policy to Societa Lineager S.R.L. (hereinafter, "Lineager"). The policy was issued in Milan by Reliance's Bordogna Branch to Lineager, also situated in Milan. The policy was to be effective from midnight on March 6, 1984 through midnight on December 31, 1985. The "description of activity implemented by the insured" included "construction of chairs and armchairs for offices, their components and other furniture." The premiums were to be paid in liras.

According to the affidavit of Mario Pietro Salaris, a claims manager, premiums were to be paid, in part, in advance on a fixed basis and part at a later date calculated on the basis of certain risk factors. Under the policy, information regarding risk factors was to be forwarded by Lineager at the end of each insurance period within the sixtieth day of the year. According to Mr. Salaris, Lineager failed to forward this information and, therefore, payment of the premium, which resulted in coverage ceasing sixty days after December 31, 1984. Because the loss at issue in this case is alleged to have occurred on November 8, 1985, and no premium had been paid as of that time, Reliance argues that the policy was not in effect.

Reliance's position is based on Article 17 of the policy and Article 1901 of the Italian Civil Code. Superior refutes this conclusion by arguing that Louisiana law is applicable. More specifically, Superior maintains that coverage remains in effect unless a notice of cancellation is sent by the insurer to the insured, as required by La. Rev.Stat.Ann. § 22:636.4 (West Supp.1988).

The court is, therefore, called upon to resolve a conflict of laws dispute.

ANALYSIS OF LAW AND FACTS:

Because this court's jurisdiction is based on diversity of citizenship, this court is *Erie*-bound to follow the conflict of laws principles of Louisiana. *Klaxon Company v. Stentor Electric Manufacturing Company, Inc.*, 313 U.S. 487, 491, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Louisiana has adopted a hybrid of Professor Brainerd Currie's governmental interest analysis theory and the *Second Restatement's* "most significant relationship" test. *See generally, Jagers v. Royal Indemnity Company*, 276 So.2d 309, 311 (La.1973); *Sandefer Oil & Gas v. AIG Oil Rig of Texas, Inc.*, 846 F.2d 319, 322 (5th Cir. 1988). Under this approach, the first inquiry is whether a false or true conflict exists. *Id.* If there is a false conflict, the court must apply the law of the jurisdiction with the sole interest. *Id.* If a true conflict is found, the court proceeds to apply the test set forth in the *Second Restatement* to determine the applicable law. *Id.* With respect to the inquiry regarding a true or false conflict, the United States Court of Appeals for the Fifth Circuit recently held:

> Professor Currie's interest analysis examines the policies of each state's laws. If the state's relationship to the dispute is within the scope of the state's policy, then the state has a legitimate "interest" in the application of its law to resolve the dispute. In a conflict between two states, if each state has such an interest, then a true conflict exists; whereas if

only one state has an interest, a false conflict exists. The unprovided-for case, under Currie's analysis, is where neither state has an interest.

*Id.* (footnote omitted).

■ The policy or purpose behind Louisiana's notice of cancellation provision [1] is to inform the insured that his policy is being cancelled and to afford him sufficient time to obtain other insurance protection. *Broadway v. All–Star Insurance Corp.*, 285 So.2d 536, 539 (La.1973); *accord, Norred v. Commercial Union Insurance Company*, 526 So.2d 829, 833–34 (La.App. 2d Cir.), *writ denied*, 531 So.2d 483 (La. 1988); *Davis Industries v. West Preferred Casualty Company*, 527 So.2d 347, 349 (La.App. 5th Cir.1988); *see also, Gulf Coast Investment Corp. v. Secretary of Housing and Urban Development*, 509 F.Supp. 1321, 1325 (E.D.La.1980) and *American Fidelity and Casualty Company v. Knox*, 164 F.Supp. 3, 6 (W.D.La. 1958). Section 636.4, therefore, is designed to protect the insured from being exposed to liability without insurance coverage. The insured in this case is Lineager, an Italian entity. Lineager is neither domiciled nor has its principal place of business in Louisiana. Because the insured in the case at bar is not a resident of Louisiana, Louisiana has no interest whatsoever in applying its notice of cancellation provision.

In *Sandefer, supra*, the plaintiff was a Texas resident who had obtained insurance policies from defendants for various oil field risks. 846 F.2d at 320. The claims at issue arose out of subsurface blowouts in oil wells situated in Louisiana. The insurance companies were domiciled in New

---

1. Section 636.4 provides, in relevant part:

    C. (1) If coverage has not been in effect for sixty days and the policy is not a renewal, cancellation shall be effected by mailing or delivering a written notice to the first-named insured at the mailing address shown on the policy at least sixty days before the cancellation effective date. After coverage has been in effect for more than sixty days or after the effective date of a renewal policy, no insurer shall cancel a policy unless the cancellation is based on at least one of the following reasons:

    (a) Nonpayment of premium.

    \*     \*     \*     \*     \*     \*

    (2)(a) A notice of cancellation of insurance coverage by an insurer shall be in writing and shall be mailed or delivered to the first-named insured at the mailing address as shown on the policy. Notices of cancellation based on R.S. 22:636.4(C)(1)(b) through (g) shall be mailed or delivered at least twenty days prior to the effective date of the cancellation; notices of cancellations based upon R.S. 22:636.-4(C)(1)(a) shall be mailed or delivered at least ten days prior to the effective date of cancellation. The notice shall state the effective date of the cancellation.

Hampshire, New York, Canada, Norway and Sweden. *Id.* at 321.

The claims submitted to the insurers were denied because of plaintiff's failure to give reasonably prompt notice of the losses as required by the policies. Plaintiff argued that Louisiana law was applicable pursuant to which an insurer could not escape liability because of the insurer's failure to give notice of loss as soon as practicable unless the insurer could demonstrate prejudice caused by the delay. *Id.* Under Texas law, the failure of the insured to give notice as soon as practicable is a valid defense under the policy irrespective of prejudice. *Id.* The district court granted summary judgment in favor of the insurers, holding that a false conflict existed, in that only Texas had an interest in the application of its law. The Fifth Circuit affirmed.

Like Superior, the plaintiff in *Sandefer* relied upon *Champion v. Panel Era Manufacturing Company,* 410 So.2d 1230 (La. App. 3d Cir.1982). In *Champion,* the issue was whether an insured's failure to give prompt notice of a suit voided coverage. The parties in *Champion* were a Texas insurer, a Texas insured and a Louisiana plaintiff suing under the Louisiana Direct Action Statute. In finding that Louisiana law was applicable, the court stated that the law at issue was designed "to prevent insurers from using the notice requirement to evade the fundamental protective purpose of the insurance contract and to assure payment of liability claims up to the policy limits for which they collected premiums." *Id.* at 1237.

The Fifth Circuit in *Sandefer* distinguished *Champion:*

> Louisiana had a legitimate interest [in *Champion* ], because its resident, the insured plaintiff suing under the Direct Action Statute, was protected by the Louisiana policy.
>
> In this case Louisiana law serves the same policy, but no Louisiana residents are involved. The injured party is the insured, Sandefer, a Texas resident. The losses for which coverage is sought oc-

curred in Louisiana, but there is no evidence that any resident of Louisiana will be affected by denial of coverage.

846 F.2d at 323. It should first be noted that the statute at issue in *Sandefer* and *Champion* is a different statute involving different policies from that involved in the case at bar. Second, as in *Sandefer,* no Louisiana residents will be affected by denial of coverage. Indeed, no Louisiana resident has even filed an action seeking to recover proceeds from the Reliance policy. Plaintiff, the only Louisiana resident in this case, has sued only a Texas entity. The Texas entity, Superior, was not a party to the insurance policy at issue. For the reasons stated in *Sandefer,* and because of the policies noted above behind Louisiana's notice of cancellation provision, this court is unpersuaded by *Champion* and can find no basis for ascertaining a Louisiana interest in applying § 636.4. The same reasoning applies to reject Superior's argument, based upon *Armstrong v. Land and Marine Applicators, Inc.,* 463 So.2d 1327 (La. App. 5th Cir.1974), that Louisiana law should be applied because the chair was sold in Louisiana, used in Louisiana and caused injury in Louisiana. Though these factors may be relevant in ascertaining whether personal jurisdiction exists over Lineager, they are not germane to the inquiry of whether Louisiana has an interest in applying its notice of cancellation provision.

Because the court has determined that Louisiana has no interest in applying § 636.4, the conflict either presents a false conflict in which Italian law would be applicable or the unprovided-for case. A false conflict exists, of course, if Italy has an interest in the application of its law. Article 1901 of the Italian Civil Code governs suspension of coverage upon non-payment of a premium:

> If a contracting party fails to pay the premium, or the first installment thereof, stipulated in the contract, the insurance is suspended until midnight on the day on which said contracting party pays the amount due.
>
> If the contracting party fails to pay any of the subsequent premiums at the

maturity dates agreed upon, the insurance is suspended from midnight of the fifteenth day following the date of maturity.

In the instances mentioned in the two preceding paragraphs, the contract is resolved ... by operation of law if the insurer, within six months from the maturity date of the premium or the installment, does not bring an action for collection. The insurer is only entitled to payment of the premium covering the current period of insurance and to reimbursement for expenses. This provision does not apply to life insurance....

Though the court has not been provided with the legislative history behind this statute or commentaries construing it, and cannot, therefore, ascertain with any precision the interest or policy behind the statute, it would be disingenuous to hold that Italy has no interest in application of this provision based on the facts of the case at bar. Though Reliance is a world-wide insurer, the policy in question was issued by a branch of Reliance in Italy to provide coverage for an industrial business, Lineager, also situated in Italy. Under Italian law insurance is a contract between the insurer and the insured. *Id.* at art. 1882. Italy's interest in regulating the insurance industry is apparent from a reading of art. 1883: "The insurance business can be carried on only by a government-controlled institution or by a joint stock company ... and subject to the rules established by special laws." One effect, if not the purpose, of art. 1901 is to provide stability and predictability for insurers operating within Italy. Thus, where a policy is issued *in Italy* by an insurer doing business *in Italy* to an insured who is domiciled *in Italy*, it cannot be successfully disputed that Italy has no interest in the application of art. 1901.

Even if Italy had no interest, this court believes that Italian law would still be applicable. "Although no Louisiana court has considered a case where neither state has an interest, *Jagers* and its progeny clearly suggest that in such a case a court also should use the *Second Restatement's*

'center of gravity' test to determine the applicable law." *Sandefer*, 846 F.2d at 323. Superior argues that under § 193 of the *Second Restatement*, Louisiana law should be applied. Section 193 provides:

The validity of a contract of fire, surety or casualty insurance and the rights created thereby are determined by the local law of the state for which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the applicable issue, some other state has a more significant relationship under the principles stated in § 6 to the transaction and the parties, in which event the local law of the other state will be applied.

*Restatement Second of Conflict of Laws*, § 193 (1971).

Superior maintains that because of an endorsement in the Reliance policy extending coverage to risks occurring in the United States that Reliance and Lineager understood that the principal location of the insured risk was to be in the United States. Superior's argument is flawed. Under art. 4 of Enclosure "A" to the Reliance Policy, coverage is provided for products manufactured in Italy and sold in all the countries of the world with certain exceptions. Thus, it is impossible to ascertain the "principal location of the insured risk." As in *Sandefer*, "Section 193 is inapplicable here because the insured risk was located in various states." *Sandefer*, 846 F.2d at 324. To follow Superior's argument would lead to an unacceptable conclusion, specifically, that the policy issued by Reliance to Lineager would be subject to the laws in 50 states, several territories and numerous countries because a product of Lineager fortuitously made its way to a particular locale. The potential exposure to insurers caused by such an anomalous result would wreak havoc in the insurance industry.

Insurance contracts that do not have a principally located risk are to be governed by § 188 of the *Second Restatement, id.,* which directs the court to consider:

(a) the place of contracting, (b) the place of negotiation of the contract, (c) the place of performance, (d) the location of

the subject matter of the contract, and (e) the domicile, residence, nationality, place of incorporation and place of business of the parties.

These contacts are to be evaluated according to the relative importance with respect to the particular issue.

With respect to factors (a), (b) and (c), the affidavit of Mr. Salaris establishes that the policy, which is written in Italian, was issued by Reliance's Bordogna Branch in Milan to Lineager, an Italian entity also located in Milan. The place of negotiation was Milan. The initial premium was paid in Italian liras to Reliance's Bordogna broker. According to the policy, all future premiums were also to be paid in Italian liras. More interestingly, numerous provisions contained in the policy, including the one at issue, are modeled on provisions of the Italian Civil Code and purport to be governed by Italian law. In addition, the policy contains a choice of forum provision stating that the competent court is "exclusively the one of the area where the policy's representative has his business address." Though it is unclear whether Lineager or Reliance is referred to as the "policy's representative," the only business addresses provided in the policy are in Milan, Italy. Thus, it may be inferred that factors (a), (b) and (c) are *centered* in Italy. These factors are the most relevant contacts with respect to notice procedures. *Sandefer*, 846 F.2d at 324.

With respect to factor (d), location of the subject matter of the contract, it is clear that coverage is extended to numerous countries, although the primary activity of the insured is centered in Italy. In this respect, the policy provides that the "description of the activity implemented by the insured" includes "construction of chairs and armchairs for offices, their components and other furniture." The construction occurs, of course, at Lineager's plant in Milan. Because consideration of these factors weighs so heavily in favor of application of Italian law, no further inquiry is warranted.

■ Finally, Superior tries to argue that there is an ambiguity between § 1, art. 3 and § 2, art. 17 of the policy.[2] The court finds no ambiguity. Section 2, art. 17, which is modeled after art. 1901 of the Italian Civil Code, is applicable where the premium is determined partly or complete-

---

2. Section 1, art. 3 of the policy provides:

Payment of the premium. The insurance goes into effect at midnight of the day indicated on the policy if the premium or its first instalment [sic] have been paid. Otherwise, it goes into effect at midnight of the day of the payment.

If the insured does not pay the premiums or the instalments, [sic] the insured is suspended from the midnight of the 15th day after the expiration date, and is reinstated beginning at midnight of the date of payment, maintaining the successive maturity dates. The premiums will have to be paid to the representative assigned to this policy, or to the Company. Section 2, art. 17 provides in relevant part:

Adjustment of the premium. If the premium is partly or completely determined by variable elements of risk, it is to be provisionally paid in advance in the amount mentioned by the policy, and adjusted at the end of each year or period covered by the contract, in accordance with the variations which intervened during said period in the elements which form the basis of the premium's assessment above the minimum premium established in the policy.

For this purpose, within 60 days from the end of each year or period of insurance the Company must be provided with the necessary data, that is:

—the gross amount of total payroll

—the volume of the business, and other variable elements mentioned in the policy.

Any difference must be paid within 15 days from written communication.

If the insured does not inform the Company of the necessary data within the terms prescribed, or if he does not pay the difference owed, the Company can extend the deadline for said payment for a period of no less than 15 days. After such period, the premium provisionally paid for the following period will be applied toward the year or period for which the adjustment has not been paid. The insurance will be suspended until the midnight of the day in which the insured has fulfilled his obligations, while the Company reserves the right to take judicial action, or to terminate the contract by notification by insured mail.

Expired contracts. If the insured does not fulfill his obligations relative to the payment of premium, the Company is not bound to cover the accidents happened in the period for which there was no coverage.

ly by variable elements of risk. Mr. Salaris' uncontested affidavit states that the Reliance policy issued to Lineager was based on variable elements of risk. Accordingly, § 2, art. 17 governs pursuant to which coverage had been suspended at the time of Mr. Fallon's alleged accident.

CONCLUSION:

This court holds that a false conflict exists whereby only Italy has an interest in the application of its law regarding the effect of non-payment of premiums. Under art. 1901 of the Italian Civil Code and § 2, art. 17 of the policy in issue, coverage was suspended at the time of Mr. Fallon's alleged accident. Because the coverage was suspended, there is no basis of liability against Reliance or AFIA. Accordingly, summary judgment shall be ENTERED in favor of Reliance and AFIA DISMISSING Superior's claim against them with prejudice.

The uncontested motion for summary judgment submitted on behalf of CIGNA is based on an affidavit by Seth Keener, regional vice president of Insurance Company of North America. According to Mr. Keener's affidavit, CIGNA is a holding company which does not write insurance but owns subsidiary insurance companies which do write insurance. One of these companies is AFIA Worldwide. The uncontested affidavit establishes that CIGNA never wrote any contract of insurance covering Lineager. Accordingly, CIGNA's motion for summary judgment must be GRANTED.

An order consistent with the terms of this memorandum ruling shall issue herewith.

THUS DONE AND SIGNED at Shreveport, Louisiana, this 19th day of January, 1989.

/s/Tom Stagg

TOM STAGG, CHIEF JUDGE