Art FRANZ, William Sem, Tom Walsh, Steve Montague and Pat Fox

v.

IOLAB, INC., A DIVISION OR SUBSIDIARY OF JOHNSON & JOHNSON, INC.

Civ. A. No. 91–501.

United States District Court, E.D. Louisiana.

Aug. 18, 1992.

1538

Don M. Richard, Denechaud & Denechaud, New Orleans, La., Gerald J. Martinez, Metairie, La., for plaintiffs.

Brooke Duncan III, McGlinchey, Stafford, Cellini & Lang, New Orleans, La., Robert B. Mitchell, Durant, Sabanosh, Nichols & Houston, Bridgeport, Conn., Joseph A. Greenaway, Johnson & Johnson, New Brunswick, N.J., for defendants.

## ORDER AND REASONS FOR RULING

CLEMENT, District Judge.

Defendant's Motion for Summary Judgment was considered this date on memoranda. For the reasons stated below, defendant's motion is GRANTED in PART and DENIED in PART.

### FACTS

Prior to December 1986, the plaintiffs, Art Franz, William Sem, Tom Walsh, Steve Montague and Pat Fox, were all sales representatives with Precision–Cosmet Company, Inc. The plaintiffs became employees of defendant Iolab, Inc. in December 1986, when Iolab purchased Precision–Cosmet. At that time, each of the plaintiffs accepted a job offer from Iolab to serve as a sales representation in his or her respective home state: Sem in Wisconsin, Franz in Louisiana, Montague in Missouri, Fox in New Jersey and Walsh in Massachusetts.

All five of the plaintiffs were fired by Iolab in 1988 or 1989. Franz was fired on September 30, 1988, Fox on January 29, 1989, Walsh on June 4, 1989, Sem on September 29, 1989, and, finally, Montague on December 29, 1989. Plaintiffs note that all but two of the 25 former Precision sales representatives hired by Iolab have been terminated.

Plaintiffs contend that they were "wrongfully hired" by Iolab. They claim that Iolab fraudulently enticed them to work for Iolab, and stay with Iolab, under the pretense of offering them a secure and mutually beneficial employment relationship. The reality, plaintiffs claim, is that Iolab hired them solely to take advantage of their relationship with Precision's customers, thus enabling Iolab to control Pre-

cision's former market share, and intended to fire them once Iolab achieved this goal.

Plaintiffs further allege that they were discharged in violation of the Employment Retirement Income Security Act (ERISA), 29 U.S.C. § 1000, *et seq.* First, they allege that their discharge violated Section 510 (29 U.S.C. § 1140) of ERISA, in that Iolab discharged plaintiffs to prevent their pension benefits from vesting. Second, plaintiffs contend that their discharge violated Section 404 (29 U.S.C. § 1104) of ERISA, in that Iolab breached its fiduciary duty to them.

At the time of their discharge, Sem, Walsh and Montague (but not Franz or Fox) each executed a severance agreement which included a complete release of any and all claims they had against Johnson & Johnson or any of its subsidiaries, including Iolab, their direct employer. Each release was given in exchange for substantial severance pay and other benefits.

Plaintiffs contend that the signing of the severance packages by Walsh, Sem and Montague were conceived in fraud and, as such, are null and void. Plaintiffs assert that no contracts were entered into by signing of such documents since they were signed under fraudulent conditions. Specifically, plaintiffs contend that, because they were fraudulently hired and/or maintained as employees by Iolab, and, any release signed by them was ultimately tainted by said fraud.

Plaintiffs also contend that the fraudulent circumstances of their hiring preclude the application of statutes of limitations that might otherwise be applicable to their state law and ERISA wrongful discharge claims. Instead, plaintiffs contend that the relevant statutes of limitations for fraud should apply.

## CHOICE OF LAW

In a diversity case in federal court, the "choice of substantive law is governed by the forum state's choice of law rules." *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir.1991) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), and *Klaxon Co. v. Sten-*

*tor Electric Mfg. Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941)). Thus, Louisiana's conflict rules will apply here.

Since 1973, Louisiana has applied an interest analysis approach to choice of law questions with respect to both torts and contracts. *Jagers v. Royalty Indemnity Co.*, 276 So.2d 309 (La.1973). This approach has been described by the Fifth Circuit as "a hybrid of Professor Brainerd Currie's governmental interest analysis theory and the Second Restatement's 'most significant relationship' test." *Fallon v. Superior Chaircraft Corp.*, 884 F.2d 229, 231 (5th Cir.1989) (citations omitted).

The Governmental Interest Analysis

■ Under this approach, the first inquiry is whether a true or false conflict exists. *Sandefer Oil & Gas v. AIG Oil Rig of Texas, Inc.*, 846 F.2d 319, 322 (5th Cir. 1988). If a

> state's relationship to the dispute is within the scope of the state's policy, then the state has a legitimate "interest" in the application of its law to resolve the dispute. In a conflict between two states, if each state has such an interest, then a true conflict exists; whereas if only one state has an interest, a false conflict exists ...

*Id.* In a true conflict case, the court must use the Second Restatement of Conflict of Laws' method to determine the applicable law. *Id.*

In this case, as Iolab points out, four of the five plaintiffs were hired, performed most of their job functions, resided at all relevant times, and were fired, in a single state. Thus, for these four plaintiffs, there is no "true" conflict as to which state's law applies. Sem's claim is governed by Wisconsin law, Montague's by Missouri law, Walsh by Massachusetts law, and Franz' by Louisiana law.

The "Most Significant Relationship" Analysis

■ There is a "true" conflict as to which state's law applies to Pat Fox's claims. She resided in New Jersey at all relevant times, was hired by Iolab there, and was discharged at a meeting there.

However, her sales territory was in New York.

In a tort case, Restatement § 145 provides that:

(1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.

(2) Contacts to be taken into account in applying the principles of § 6[1] to determine the law applicable to an issue include:

(a) the place where the injury occurred,

(b) the place where the conduct causing the injury occurred,

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and

(d) the place where the relationship, if any, between the parties is centered.

*Brown v. DSI Transports, Inc.*, 496 So.2d 478, 481 (La.App. 1 Cir.1986).

In this case, the place where the injury occurred appears to be both New Jersey, where Fox resided, and New York, where she worked. The place where the conduct causing the injury occurred appears to be California, where Iolab is located, and New Jersey, where Fox was hired and terminated. Iolab is a Delaware corporation with its principle place of business in California, and Fox's residence is New Jersey. These three factors do not clearly favor the application of any one state's law.

The place where the parties' relationship was centered is New York, Fox's sales territory. Since this action arises out of her employment relationship, this factor is the most relevant of the four Restatement factors. Since that relationship was centered in New York, the laws of the state of New York shall govern all state law issues relevant to her claims.

## FRAUD

Iolab raises a number of questions about plaintiff's fraud claim. First, Iolab contends that plaintiffs have not pled fraud with the specificity required by Fed.R.Civ. Proc. 9(b). Second, plaintiffs contend that there is no cause of action, under any of the five states' laws, for fraudulently inducing someone into entering, or staying in, an at-will employment relationship.

### Pleading Fraud Under Rule 9(b)

█ Rule 9(b) of the Federal Rules of Civil Procedure requires that, in all averments of fraud, the circumstances constituting fraud must be stated with particularity.

█ In this case, the word "fraud" does not appear in any of the plaintiffs' pleadings until the theory of fraud is asserted in plaintiffs' opposition to Iolab's motion for summary judgment. However, it is not required that the plaintiff specifically allege the legal theory of fraud, only that he "allege with particularity *the defendant's acts* which the plaintiff contends amount to fraud." *Unimobil 84 Inc. v. Spurney*, 797 F.2d 214, 216 (5th Cir.1986) (emphasis added). Alleging the acts with "particularity" means disclosing such matters as "the time, place and contents of the false representations, as well as the identity of the person making the misrepresentation and what he obtained thereby." 5 Wright and Miller, *Federal Practice and Procedure*, § 1297, p. 590 (1990). *See*

---

1. Section 6, referred to in § 145 above, provides:

(1) A Court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations

(e) the basic policies underlying the field of law

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

*Santos v. Sacks*, 697 F.Supp. 275, 282–83 (E.D.La.1988).

*Ouaknine v. MacFarlane,* 897 F.2d 75 (2d Cir.1990); *American Town Center v. Hall 83 Assoc.,* 912 F.2d 104 (6th Cir.1990); *Guidry v. Bank of LaPlace,* 740 F.Supp. 1208, 1216 (E.D.La.1990).

In plaintiffs' complaints, the plaintiffs identify the time and place of the alleged misrepresentation. They state that they were "assured that their employment was secure" at a meeting called shortly after Iolab's buyout of Precision. Complaint and First Amended Complaint, ¶ VIII. In the next paragraph, the plaintiffs note that they were nonetheless terminated. Complaint and First Amended Complaint, ¶ IX. The complaints also describe what Iolab gained by the alleged fraud, alleging that Iolab used the plaintiffs to capture Precision's market share after leading the plaintiffs to believe their jobs were secure. Complaint and First Amended Complaint, ¶ XII. Thus, although the complaints do not specifically allege fraud, they do describe the act that the plaintiffs contend amount to fraud: that Iolab, at a meeting shortly after they were hired, led the plaintiffs to believe that their jobs were secure.

### Fraudulent Inducement of At–Will Employee

Iolab alleges that there is no cause of action for fraudulently inducing someone to enter, or remain in, an at-will employment relationship. Neither plaintiffs nor Iolab have provided the Court with any legal authority on this specific question.

Most courts facing the question of whether one can be fraudulently induced to become, or remain, an at-will employee, have answered in the affirmative. *Bernoudy v. Dura–Bond Concrete Restoration, Inc.,* 828 F.2d 1316, 1318–19 (8th Cir. 1987) (Missouri law); *Berger v. Security Pacific Information Systems, Inc.,* 795 P.2d 1380, 1384 (Colo.App.1990); *Walton v. Carolina Tel. & Telegraph Co.,* 93 N.C.App. 368, 380, 378 S.E.2d 427 (1989); *Albrant v. Sterling Furniture Co.,* 85 Or. App. 272, 275, 736 P.2d 201 (1987). These courts have reasoned that a claim of fraudulent inducement is separate from a claim based on termination of employment, which is not available to at-will employees. *See*

*e.g., Bernoudy,* 828 F.2d at 1318–19. Consequently, "an employer's right to terminate an at-will employee without cause does not protect the employer from liability for fraud in inducing the employee to accept employment." *Berger,* 795 P.2d at 1383.

However, two courts have held that one cannot be fraudulently induced to enter, or remain in, at-will employment. *Shelby v. Zayre Corp.,* 474 So.2d 1069, 1071 (Ala. 1985); *Grant v. DCA Food Industries, Inc.,* 124 A.D.2d 909, 909–10, 508 N.Y.S.2d 327 (App.Div.3d Dep.1986). The courts reasoned, as Iolab contends, that an employee who "could be terminated 'with or without notice, at any time,'" cannot be said to have reasonably relied on a misrepresentation by her employer. *Shelby,* 474 So.2d at 1071.

None of the above decisions are binding on this Court. Although *Bernoudy* and *Grant,* above, were decided under Missouri and New York law, respectively, neither was decided by the state's high court. Furthermore, the two decisions represent the courts' determination of a question of first impression, and were not based on interpretations of rulings by the states' high courts. Consequently, they represent only persuasive authority.

This Court is persuaded by the reasoning of the majority, above, and holds that an at-will employee may maintain an action for fraudulent inducement into employment. To hold otherwise would give employers carte blanche to make fraudulent promises of job security to induce individuals into short term employment.

The facts of the *Berger* case, cited above, provide a compelling argument for the availability of the tort of fraudulent inducement for at-will employees. In *Berger,* the defendant corporation induced the plaintiff to move from New Orleans to Denver to manage a sales project. Ms. Berger was promised job security, while the defendant company knew that it was in serious financial trouble. The plaintiff was fired eight months later, after purchasing a home in Denver which she was forced to sell at a loss. 795 P.2d at 1381–83.

The fact that an employer has the right to fire an at-will employee such as Ms. Berger should not allow the employer to promise her the moon when it knows her services are only needed for a short period of time. Such tortious conduct must be actionable.

### The Merits of Plaintiffs' Claim

▮ To prevail, the plaintiffs must prove the traditional elements of fraud: (1) that Iolab promised them secure employment, (2) that this promise was material to the plaintiffs, (3) that Iolab made this promise to induce them into working for, or remaining with, Iolab, and (4) that they reasonably relied on this promise. Because plaintiffs are asserting fraud based on a promise to perform in the future, they must also prove (5) that Iolab *never intended* to perform this promise. *See Emerick v. Mutual Benefit Life Ins. Co.*, 756 S.W.2d 513, 516 (Mo.1988); *Tribune Printing Co. v. 263 Ninth Ave. Realty*, 57 N.Y.2d 1038, 444 N.E.2d 35, 35, 457 N.Y.S.2d 785, 785 (1982); *Automatic Coin Enterprises v. Vend–Tronics*, 433 So.2d 766, 768 (La.App. 5th Cir.1983); *McEvoy Travel Bureau v. Norton Co.*, 408 Mass. 704, 563 N.E.2d 188 (1990); *Lundin v. Shimanski*, 124 Wis.2d 175, 192, 368 N.W.2d 676 (1985).

▮ The misrepresentation alleged by plaintiffs occurred in January of 1990, *after* the plaintiffs were hired in December 1989. Accordingly, the alleged misrepresentation could not have been material to the plaintiffs' decision to work for Iolab. It can only be relevant to their decision to *remain* with Iolab. Accordingly, plaintiffs' fraud claim is limited to one for "fraudulent inducement to *continue* employment."

Mr. Franz, in his affidavit, testifies that he and the other plaintiffs were told by Iolab at a meeting shortly after they were hired that they would have "a long and prosperous future" with Iolab as long as they continued to perform satisfactorily. A jury could reasonably infer from this testimony and the surrounding circumstances that Franz and the other plaintiffs were fraudulently induced to remain with Iolab. Accordingly, summary judgment must be denied on the issue of fraudulent inducement.

### THE RELEASES

▮ It is not disputed that Sem, Walsh and Montague all signed releases of all claims against Iolab. The plaintiffs do not deny the existence of the releases, but, rather, contend that they were fraudulently procured. More specifically, the plaintiffs contend that the releases are tainted by Iolab's fraudulent inducement of the plaintiffs to work for Iolab.

To have the Court rescind the releases on the basis of fraud, plaintiffs must establish (1) that Iolab promised them secure employment, (2) that this was promise was material to the plaintiffs, (3) that Iolab made this promise to induce them into signing the releases, (4) that they reasonably relied on this promise by signing the releases, and (5) that Iolab never intended to perform this promise. *See* discussion of elements of fraud, *supra*.

Plaintiffs may be able to prove elements 1, 2 and 5, above. However, it is impossible for them to prove elements 3 and 4. There simply is no logical relationship between the alleged fraud perpetrated by Iolab to induce the plaintiffs to work for Iolab and the plaintiffs decision to sign releases after being terminated. Because the plaintiffs had already been terminated at the time they signed the releases, it should have been readily apparent to them that the earlier (alleged) fraudulent promise of longterm employment was untrue. Consequently, they could not have reasonably relied on that promise in relinquishing their rights against Iolab.

In order to have the releases rescinded by the Court, the plaintiffs need to establish that Iolab made misrepresentations that were relevant to the plaintiffs' decisions to sign the releases. The plaintiffs have made no such allegation.

Accordingly, plaintiffs Sem, Walsh and Montague cannot maintain any claims against Iolab arising out of their employment relationship.

**1544**

### STATE LAW WRONGFUL DISCHARGE

 Iolab claims that the plaintiffs, as former employees at-will, cannot maintain a state law wrongful discharge action in any of the five relevant jurisdictions. Iolab is correct.

Under the doctrine of at-will employment, both employers and employees are free to end the employment relationship at any time, and for any reason, without liability, provided that the termination violates no statutory or constitutional provision and, obviously, that there is no contract of employment for a definite term. *Johnson v. Delchamps, Inc.*, 897 F.2d 808, 810 (5th Cir.1990) (Louisiana law).

Many jurisdictions have developed "public policy" exceptions to the employment at-will doctrine. *See, e.g., Hobson v. McLean Hospital Corp.*, 402 Mass. 413, 416, 522 N.E.2d 975 (1988); *Brockmeyer v. Dun & Bradstreet*, 113 Wis.2d 561, 335 N.W.2d 834 (1983). However, Louisiana and New York do not recognize any public policy exception to the doctrine. La.Civ.Code Ann. art. 2747; *Murphy v. American Home Products Co.*, 58 N.Y.2d 293, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983). Consequently, Franz and Fox cannot maintain state law wrongful discharge claims.

### ERISA WRONGFUL DISCHARGE

#### Prescription

 As noted above, plaintiffs have alleged that Iolab discharged them to prevent their right to pension benefits from vesting, in violation of Section 510 of ERISA (29 U.S.C. § 1140). Iolab claims that plaintiffs' Section 510 claims are prescribed.

Section 510 does not contain a limitations provision. Where federal statutes do not contain limitations provisions, the court is to borrow the statute of limitations from the most closely analogous state law cause of action. *Reed v. United Transportation Union*, 488 U.S. 319, 109 S.Ct. 621, 102 L.Ed.2d 665 (1989). The Fifth Circuit applies the state law of the forum state in this circumstance. *Henson–El v. Rogers*, 923 F.2d 51, 52 (5th Cir.1991) (§ 1983 ac-

tion); *Wood v. Combustion Engineering, Inc.*, 643 F.2d 339, 342 (5th Cir.1991) (Securities action). In ERISA § 510 actions, the Fifth Circuit applies the relevant wrongful discharge statute of limitations. *McClure v. Zoecon, Inc.*, 936 F.2d 777, 778–79 (5th Cir.1991). Thus, in this case, the Louisiana wrongful discharge limitations period will apply.

Louisiana does not have a specific wrongful discharge statute of limitations. In *Young v. Martin–Marietta Corp.*, 701 F.Supp. 567 (E.D.La.1988), also an ERISA § 510 action, the court applied Louisiana's one-year statute of limitations for delictual actions. *Id.* at 569; La.Civ.Code Ann. art. 3492. This is consistent with the Louisiana jurisprudence which has consistently applied the one-year prescriptive period of Article 3492 in wrongful discharge cases. *Lynn v. Berg Mechanical, Inc.*, 582 So.2d 902 (La.App.2d Cir.1991); *Arvie v. Century Tel. Enterprises, Inc.*, 452 So.2d 392 (La. App. 3d Cir.1984)

Franz was terminated on September 30, 1988. He filed his first complaint on September 26, 1990 (C.A. No. 90–3914). Fox was terminated on January 29, 1989. Her action was commenced on January 29, 1991. Accordingly, Franz' and Fox's ERISA § 510 claims are prescribed.

#### Equitable Tolling

The plaintiffs assert that the prescriptive period for their claims should be expanded under the *contra non valentum* doctrine. However, the plaintiffs have not presented any evidence in support of the proposition that they were not aware of the basis of their claim until some point within a year of the commencement of the lawsuit.

### ERISA BREACH OF FIDUCIARY DUTY

 Plaintiffs also allege that Iolab violated a duty imposed by Section 404 of ERISA by not truthfully and fully informing them about accrued benefits and time toward vesting in Iolab's benefit programs.

An ERISA plan participant cannot recover compensatory relief based on a breach of fiduciary duty. *Massachusetts Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140,

105 S.Ct. 3085, 3089, 87 L.Ed.2d 96 (1985); *Simmons v. Southern Bell Tel. & Tel. Co.,* 940 F.2d 614, 617 (11th Cir.1991); *Hozier v. Midwest Fasteners, Inc.,* 908 F.2d 1155, 1162 n. 7 (3rd Cir.1990). Under Section 409(a) of ERISA, a plan beneficiary may only recover to benefit the plan as a whole. *Russell,* 473 U.S. at 140–42, 105 S.Ct. at 3089–90; *Simmons,* 940 F.2d at 617. It does not appear that the plaintiffs in this case have any intention of obtaining a recovery on behalf of the Iolab ERISA plan.

Accordingly, the plaintiffs' breach of fiduciary claim under ERISA must be dismissed.

### CONCLUSION

For the reasons stated above,

IT IS ORDERED that defendant's motion for summary judgment is GRANTED as to plaintiffs Sem, Walsh and Montague, and GRANTED in PART and DENIED in PART as to plaintiffs Franz and Fox.