442 So.2d 772 (1983)
James E. JONES et al., Plaintiffs-Appellees,
v.
AMERICAN FIRE-INDEMNITY INSURANCE COMPANY et al., Defendants-Appellant-Appellee.
No. 15,808-CA.
Court of Appeal of Louisiana, Second Circuit.
November 29, 1983.
*773 Lunn, Irion, Switzer, Johnson & Salley by Jack E. Carlisle, Jr., Shreveport, for defendants-appellant-appellee.
Nelson, Hammons & Johnson by John L. Hammons, Shreveport, for plaintiffs-appellees.
Before HALL, JASPER E. JONES and FRED W. JONES, JJ.
FRED W. JONES, Judge.
Plaintiffs, husband and wife, were injured when the automobile in which they were riding [owned by the husband's employer] was struck from the rear by another vehicle. Subsequent to the filing of this suit, settlement was effected with the tortfeasor [an "under-insured" motorist under our law] and his insurer. After a merit-trial, judgment was rendered pursuant to a jury verdict in favor of plaintiffs against the employer's uninsured motorist ("UM") carrier. The latter appealed, contending:
(1) The trial judge erred in holding, as a matter of law, that the employer's comprehensive liability insurance policy, issued and delivered in Texas, provided UM coverage under Louisiana rather than Texas law.
(2) The jury committed error in finding that the plaintiff husband's injuries were causally related to the rear-end collision, and in making an excessive award.
(3) The trial judge erroneously awarded legal interest from date of judicial demand rather than from date of judgment.
Plaintiffs also appealed, asserting that the jury award of $267,000 in damages to the husband was inadequate.
For the reasons hereinafter detailed, we affirm.
Context Facts
On May 23, 1979, James Jones, accompanied by his wife, Mary, and their children, was driving a car owned by his employer, Cameron Iron Works, Inc. ("Cameron") in Caddo Parish, where the family resided. Jones, employed by Cameron since 1969, was a sales and service representative who was furnished the automobile as an employment fringe benefit. While stopped for a traffic light, the motor vehicle driven by Jones was struck forcefully from the rear by a car operated by Roger Donahue, also a resident of Caddo Parish.
This litigation ensued.
According to a stipulation entered into between the plaintiffs and Cameron's automobile liability insurer, Compass Insurance Company ("Compass"), the following pertinent facts were established:
(1) Cameron, with its primary place of business in Houston, is qualified to do business in Texas and Louisiana.
(2) Cameron owns motor vehicles principally garaged and primarily utilized both in Texas and Louisiana. The vehicle in question was registered in Louisiana and had Louisiana license plates.
(3) Compass is qualified to do business both in Texas and Louisiana.
(4) Compass issued and delivered to Cameron in Texas a comprehensive automobile liability insurance policy covering its motor vehicles, including the car driven by Jones. There was no written rejection of UM coverage in connection with issuance of this policy.
(5) The minimum Texas UM coverage requires benefits of $10,000 per person and $20,000 per occurrence for bodily injury or death.
The policy issued by Compass to Cameron provided for single limits liability coverage of $500,000. The parties agreed that the issue of UM coverage was a question of law which should be decided by the trial judge and not the jury. Pursuant thereto, the trial judge ruled:

*774 "It [the insurance policy] was executed and delivered in the State of Texas, but meant to, specifically, apply in Louisiana, to a Louisiana vehicle, titled in Louisiana, driven in Louisiana, stationed in Louisiana, the Louisiana law should have been complied with.
"[t]here is no mention of uninsured motorists insurance ... And so, it's my opinion that the Louisiana uninsured motorists provision applies. Which means there is $500,000.00 worth of uninsured motorists protection, for the accident."
After the merit-trial in March 1983, and pursuant to a jury verdict, judgment was rendered against Compass in favor of James Jones for $267,000 and in favor of Mrs. Mary Jones for $55,000, with interest on each award running from judicial demand, and with each award subject to a credit of $25,000 because of the prior settlement with the tortfeasor.
UM Coverage
Defendant Compass argues that, since the liability insurance policy was issued by a Texas insurance company to a Texas corporation and delivered in Texas, the Texas UM law [with its minimal mandatory coverage] should apply rather than the Louisiana UM statute.
In Jagers v. Royal Indemnity Company, 276 So.2d 309 (La.1973), our supreme court adopted an "interest analysis" as the proper vehicle for resolving conflicts of law problems in this state. As a result, Louisiana law was applied to a damage suit in this state between two Louisiana residents arising out of an accident in Mississippi.
We extended this rationale to contract law in Sutton v. Langley, 330 So.2d 321 (La.App. 2d Cir.1976). There, a Texas resident sued a Louisiana resident for injuries sustained in a Louisiana automobile accident. The plaintiff also sought to recover under the UM clause of a liability policy issued in Texas. At that time "stacking" of multiple UM coverages was permitted in Louisiana but not in Texas. Utilizing a "balance-of-interests" test to resolve the choice of law problem, we reasoned:
"We realize that Texas is not without interests in the uninsured motorist coverage question. That interest lies in the possible effect the application of Louisiana law might have on insurance rates for such coverage written in Texas for Texas residents. However, it must be said that this interest is minimal when one is dealing with a standard form insurance contract written by an insurer who does business in several, if not all, the states. Also, it must be recognized that in our mobile society the insurer could not reasonably contemplate the insured driving only in Texas and being subject to Texas interpretation of the policy provisions at all times. When Texas' interest is compared to Louisiana's interest in the regulation of awards to victims on its highways, and in protecting persons on its highways from damage by uninsured motorists, and in equally assessing the burden of that award to all culpable parties, it must be concluded that the interests of Louisiana prevail." p. 328
We find that Louisiana has an even greater interest in the application of its law under the facts of this case than it did in Sutton. Here the automobile in question was garaged, registered and licensed in Louisiana. Obviously, the likelihood of the application of the Louisiana UM statute to its insurance policy should have been readily envisioned by Compass. Under these circumstances, the mere fact that the policy was issued and delivered in Texas should not relieve the insurance company of the necessity of complying with the Louisiana UM requirements. Consequently, the trial judge ruled correctly that Louisiana law with reference to UM coverage applied rather than Texas law.
Since Cameron did not reject UM coverage, our law provides for this in an amount "not less than the limits of bodily injury liability provided by the policy." La.R.S. 22:1406(D). That coverage in this case was $500,000, as held by the trial judge.
The incidental argument of Compass that the liability policy in question is *775 not an automobile liability policy within the meaning of the UM statute because it provided that the $500,000 coverage was subject to a $500,000 deductible is devoid of merit. All motor vehicles registered in Louisiana must be covered by liability insurance or the owner must be certified as self-insured. La.R.S. 32:861. Since Cameron concededly did not fall into the latter category, it was legally required to cover the car driven by Jones with liability insurancewhich it purported to do. To permit circumvention of the law by insertion of a deductibility rider equalling the coverage would be contrary to public policy, and we so hold. Of course, any claim that Compass might have for reimbursement from Cameron because of the terms of this insurance policy is not pertinent to this litigation.
In summary, the trial judge did not err in determining that the UM coverage in this case was the sum of $500,000, under the terms of the Louisiana UM statute.
Jury Award to James Jones
Defendant Compass contends that the jury was clearly wrong when it found that Jones' back condition was caused by the rear-end collision of May 23, 1979, and that its award of $267,000 was excessive.
Immediately following the accident Jones was taken to the emergency room of Schumpert Medical Center in Shreveport. Because of complaints of neck and back pain he was subsequently referred to Dr. Zum Brunnen, an orthopedic surgeon, who examined Jones on May 29, 1979, and on several other occasions in June and July. It was this doctor's opinion that Jones suffered a mild cervical strain. However, he noted that plaintiff's complaints of numbness in two toes of his right foot were consistent with an injury to the L-5 region of the patient's back.
Dr. Etheredge, partner and fellow orthopedic surgeon of Dr. Zum Brunnen, examined Jones on July 23, 1979. Plaintiff was complaining of numbness in his leg and a low back pain which radiated down into his right leg. Dr. Etheredge again saw Jones on August 9 and August 28. He opined that plaintiff's back complaint was due to the stretching, in the automobile accident, of a surgical scar resulting from a back operation undergone by Jones some years prior thereto.
Dr. Green, another Shreveport orthopedic surgeon, began treating Jones on August 28, 1979. Because plaintiff asserted that he had suffered from severe back and leg pains since the May 1979 rear-end collision, Dr. Green had him admitted to a hospital for evaluation and treatment by a "pain team". Jones remained hospitalized for 16 days and then was discharged with a diagnosis of chronic low back pain, nerve root irritation, depression and anxiety. In view of the patient's aversion to surgery, conservative treatment was prescribed and administered over the following months.
During an April 1980 visit Dr. Green found that Jones was complaining of increased back and leg pain. A tentative diagnosis of possible ruptured disc at the 4th and 5th lumbar level was made. Since a myelogram performed on Jones in May 1980 showed a defect in the back, the plaintiff underwent a laminectomy by Dr. Green on May 28, 1980, involving removal of part of the bony spine and incision of the scar tissue in the area of the 5th lumbar. The post-operative diagnosis was epidural scarring of the right 5th lumbar nerve root, which led Dr. Green to believe that the rear-end collision had aggravated scarring around a nerve which followed disc surgery performed on Jones in 1970. As explained by Dr. Green, scar tissue present since the initial back surgery in 1970 was stretched in the 1979 accident, causing the severe pain experienced by Jones.
Subsequent to the May 1980 laminectomy, Jones was reported by Dr. Green to have experienced the following periods of hospitalization:
(1) October 9, 1981-October 13, 1981; diagnosisdepressive neurosis.
(2) April 1, 1982-April 5, 1982; diagnosismusculo-ligamentous sprain of lumbar spine; physical therapy, traction prescribed.

*776 (3) July 26, 1982-July 30, 1982; diagnosislumbo-sacral and musculoligamentous sprain. Also experiencing emotional problems.
(4) October 22, 1982-November 8, 1982; recurrent back and leg complaints and emotional problems.
Dr. Green concluded by stating that the 34 year old plaintiff was totally and permanently disabled because of his psychological problems and back condition.
Dr. Green referred Jones to Dr. Seiden, a Shreveport psychiatrist, who examined and treated plaintiff during the latter's stay at a private mental hospital from September 29, 1982 until October 7, 1982. The diagnosis was "adjustment disorder with a depressed mood, severe depression with rage response." Dr. Seiden believed that Jones was experiencing chronic back pain which increased his psychological problems which, in turn, caused an increase in the pain. He considered the plaintiff to be totally disabled from performing any gainful employment, and recommended six months of intensive in-patient psychiatric treatment.
Jones had also been examined and treated by Dr. Kimbell, another Shreveport psychiatrist.
Compass argues that Jones' back condition was attributable, not to the May 1979 rear-end collision, but to the strenuous manual labor performed in connection with his employmentas described in detail by other Cameron employees. Their testimony showed that plaintiff continued working for Cameron after the accident, purportedly engaging in rather demanding physical tasks, until he was fired on September 17, 1979.
The implied jury conclusion that there was a causal connection between the rear-end collision of May 1979 and plaintiff's back condition was a finding of fact which we may not disturb in the absence of manifest error. Soileau v. South Central Bell Telephone Co., 406 So.2d 182 (La. 1981). In view of the fact that Jones was able to work prior to the accident, the force of the collision, the complaints of back and leg pain immediately following the collision, and the overwhelming weight of the medical testimony to the effect that there was a logical relation between the trauma of the accident and the back ailment with its concomitant psychological disturbance, we cannot say that the jury was clearly wrong in its factual conclusion.
We turn now to the argument of Compass leveled at the alleged excessiveness of the award and that of Jones at its alleged inadequacy.
It is impossible for us to discern from the record exactly what portion of the award to Jones was allotted by the jury to general damages and what portion to special damages. Past medical expenses appeared to have been in the neighborhood of $20,000. Dr. Harju, a college economics professor, calculated that plaintiff's lost wages and fringe benefits would amount to $656,575, assuming total and permanent disability. However, viewing all of the medical evidence in a light most favorable to plaintiff, the jury could reasonably have concluded that plaintiff's psychological disturbance [apparently his most significant residual disability] could be alleviated by proper treatment, as attested to by Dr. Seiden. Therefore, there was record evidence to support a jury conclusion that plaintiff was not permanently foreclosed from gainful employment.
For these reasons, we cannot say that the jury award of $267,000 in favor of James Jones was either excessive or inadequate.
Running of Legal Interest
Defendant Compass asserts that the trial judge erred in decreeing that legal interest should run from date of judicial demand rather than date of judgment, citing in support thereof Guidroz v. Tauzin, 413 So.2d 682 (La.App. 3rd Cir.1982). There, relying upon the case of Hoefly v. Government Employees Insurance Company, 403 So.2d 853 (La.App. 2d Cir.1981), the court found that liability of the UM carrier was only in contract and that there was no *777 solidary liability with the tortfeasor. Consequently, interest was to run from date of judgment. We note, however, that our Hoefly case was reversed by the supreme court in an opinion reported at 418 So.2d 575 (La.1982), in which the court found that the liability of the UM carrier and the tortfeasor was solidary, since they are "obliged to do the same thing."
A judgment against the tortfeasor would have carried legal interest from date of judicial demand. La.R.S. 13:4203. Since the UM carrier is solidarily liable with the tortfeasor, it stands to reason that a judgment against it should also bear legal interest from date of judicial demand rather than date of judgment. The trial judge ruled correctly on this issue.
Decree
For the reasons set forth above, we affirm the judgment of the district court, with costs of appeal assessed one-half to plaintiffs and one-half to defendant.