**Lemong GATES and Bill Gates, Plaintiffs–Appellants,**

v.

**Nancy A. CLARET, et al., Defendants,**

**State Farm Mutual Automobile Insurance Co., Defendant–Appellee.**

No. 91–3355
Summary Calendar.

United States Court of Appeals, Fifth Circuit.

Oct. 22, 1991.

Rehearing Denied Nov. 19, 1991.

---

Fredericka Homberg Wicker, New Orleans, La., Robert W. Booksh, Jr., Booksh Law Firm, Metairie, La., for plaintiffs-appellants.

James Stephen Thompson, Dan R. Dorsey, Porteous, Hainkel, Johnson & Sarpy, New Orleans, La., for State Farm.

Before POLITZ, KING, and WIENER, Circuit Judges.

POLITZ, Circuit Judge:

Lemong and Bill Gates appeal the district court's entry of summary judgment dismissing their claim against their own underinsured motorist carrier on the grounds that the Gateses breached the terms of the policy and violated Florida law by settling with the tortfeasor without their insurer's approval. Arguing that Louisiana law applies, the Gateses appeal. Finding no error, we affirm.

*Background*

The conflicts of law issue framed in this case arises in the context of an automobile accident between Florida and Louisiana domiciliaries. Louisiana resident Nancy Claret negligently drove her automobile into that of Florida resident Lemong Gates. Ms. Gates, joined by her husband, filed this diversity action against Claret, Claret's liability insurer, and the Gateses' own uninsured motorist carrier, State Farm Mutual Automobile Insurance Company. The Gateses settled with Claret and her insurer for the policy limits; the damages they sustained, however, exceeded those limits. Remaining in this action, then, is the Gateses' claims against their insurer, State Farm. The Gateses' insurance policy with State Farm was executed and delivered in Florida where their vehicle was purchased, registered, licensed, and garaged. Lemong Gates was present in Louisiana only for a brief transient visit.

The Gateses effected the settlement with Claret and her insurer without first submitting the settlement agreement to State Farm for approval. Pursuant to both Florida law, *see* Fla.Stat. § 627.727(6), and the provisions of the State Farm insurance policy, the Gateses cannot recover underinsurance coverage unless they secured State Farm's approval of their settlement with

the tortfeasor, Claret.[1] By contrast, Louisiana law provides the very opposite: an insurer may not enforce a clause excluding coverage in the event of an insured's failure to obtain consent. *Bond v. Commercial Union Assurance Co.*, 407 So.2d 401 (La.1981) (citing *Niemann v. Travelers*, 368 So.2d 1003 (La.1979)). Concluding that the law of Florida, and not Louisiana, controls this dispute, the district court granted summary judgment in State Farm's favor. The Gateses timely appealed.

## Analysis

■ The Gateses maintain that Louisiana law should be applied in this dispute and that their failure to comply with the insurance contract and with Florida law does not adversely affect their claim against State Farm. The choice of law rules of the forum state, Louisiana, are controlling. *Klaxon Co. v. Stentor Electric Manufacturing Co.*, 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). Louisiana employs an "interest analysis" that we have viewed in two steps.[2] First, a "governmental interest" analysis determines whether a false or true conflict exists. *Sandefer Oil & Gas, Inc. v. Aig Oil Rig, Inc.*, 846 F.2d 319 (5th Cir.1988) (citing *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973) and B. Currie, *Selected Essays on the Conflict of Laws* (1963)). If only one state has an interest then a false conflict exists and the law of the solely interested jurisdiction controls. Alternatively, if two or more states have an interest, then the court reaches the second step of Louisiana's conflict of law analysis and applies the *Second Restatement*'s "most significant relationship" approach. *See Restatement (Second) of Conflict of Laws* § 6 (1971); *see also Sandefer.*

■ The district court found that Louisiana has no interest in the present dispute. None of the parties before the court were Louisiana residents, or even quasi-residents. The vehicle involved was owned by Florida domiciliaries and was purchased, registered, licensed, garaged, and insured in Florida. Accordingly, reasoned the district court, Florida law controls, as Florida has an interest in prohibiting collusion between parties to the detriment of Florida companies and Florida insurance rates. The Gateses counter that Louisiana has an interest in regulating awards for accidents on its highways, and, more specifically, in protecting underinsured defendants from a consent-to-settle requirement that could hamper a defendant's ability to settle a claim.

The test for whether a state has an "interest" under the governmental interest analysis was described by this court in *Sandefer*: "If the state's relationship to the dispute is within the scope of the state's policy, then the state has a legitimate 'interest' in the application of its law to resolve the dispute." 846 F.2d at 322. The *Sandefer* court then applied this rule to determine whether Louisiana or Texas law governed oil field risk insurance issued in Texas where the claims arose in Louisiana, but no Louisiana residents were involved. The untimeliness of the insured's notice of the claim was at issue.[3] In holding that Louisiana law did not apply, the *Sandefer* decision distinguished a Louisiana case that had applied the Louisiana notice rule. *See Champion v. Panel Era Manufacturing Co.*, 410 So.2d 1230 (La. App.), *cert. denied*, 414 So.2d 389 (La.1982) (discussed in *Sandefer*). In *Panel Era*, unlike in *Sandefer*, a Louisiana resident was involved in the dispute. The *Sandefer* court reasoned that in *Panel Era* "Louisi-

---

**1.** The district court found that State Farm was prejudiced by the settlement.

**2.** The interest analysis is a jurisprudential creation, *see Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973), notwithstanding the *lex loci delicti* principle described in Louisiana Civil Code article 15. Article 15 is not "applied literally" because it "begs the question." *Sandefer Oil & Gas, Inc. v. Aig Oil Rig, Inc.*, 846 F.2d 319, 321 (5th Cir.1988) (explaining that the article's

discussion of "effects of acts" leaves open to the judiciary the question of when a contract has effect in Louisiana).

**3.** Under Texas law, an insured's failure to give prompt notice of a suit voided coverage; by contrast, in Louisiana, the insurer must prove actual prejudice for lack of notice to defeat an insured's claim.

ana had a legitimate interest, because its resident, the injured plaintiff suing under the direct action statute, was protected by the Louisiana policy." 846 F.2d at 323. The *Sandefer* court conceded that "[i]n this case Louisiana law serves the same policy[.]" *Id.* Louisiana law did not apply, however, because there was no evidence that a Louisiana resident would be affected by the resolution of the *Sandefer* dispute, and because there was "no showing that Louisiana's general policy ... was designed to promote such a special interest." *Id.*

As in *Sandefer*, only out-of-state domiciliaries stand before this court. After scrutinizing the Louisiana policy behind the state's prohibition on insurer's consent clauses, and the broader state policies of controlling tort recovery for accidents within the state, we do not find a "special interest" requiring the application of Louisiana law to these facts. Louisiana authorities promulgating and interpreting the state's bar on consent-to-settlement clauses in insurance contracts do not articulate an interest, inuring to the benefit of Louisiana tortfeasors, that is strong enough to control a suit wherein no Louisiana residents are actually before the court. In the original case to invalidate consent clauses, the Louisiana Supreme Court articulated a state "interest of securing sure and early settlement with the tortfeasor's liability insurer[.]" *Niemann v. Travelers Insurance Co.*, 368 So.2d 1003, 1008 (La.1979).[4] The Louisiana Supreme Court later described the consent prohibition as "fully justified on the ground that such a coverage exclusion conflicts with the uninsured motorist statute's aim of promoting full recovery for all damages suffered by inno-

cent, insured motorists." *Bond v. Commercial Union Assurance Co.*, 407 So.2d 401, 411 (La.1981).

The state interests would require the application of Louisiana law if the "innocent, insured motorists" were Louisiana residents. *See, e.g., Stickney v. Smith*, 693 F.2d 563 (5th Cir.1982); *Bell v. State Farm Mutual Auto Insurance Co.*, 680 F.2d 435 (5th Cir.), *cert. denied*, 459 U.S. 1088, 103 S.Ct. 572, 74 L.Ed.2d 934 (1982). In the case at bar, however, it is the negligent defendant, and not the injured victim, who is domiciled in Louisiana. The Gateses rely on Louisiana's general motorist policies, as applied in *Sutton v. Langley*, 330 So.2d 321 (La.App.), *cert. denied*, 333 So.2d 242 (La. 1976), to demonstrate that this difference does not defeat the application of Louisiana law.[5] The conflict in *Sutton* was between Texas and Louisiana guest passenger rights. The accident at issue in *Sutton* occurred in Louisiana; the plaintiff guest and the defendant owner were Texas residents. Other defendants who were Louisiana domiciliaries were also before the *Sutton* court. It is not expressly stated, merely suggested, that the minor driver of the car was a Texas resident, and that the car was garaged in Texas.[6] The court recognized Texas' interest in protecting Texas insurance rates, but concluded that "this interest is minimal." *Sutton*, 330 So.2d at 328. Louisiana interests were delineated as: "the regulation of awards to victims on its highways, and in protecting persons on its highways from damage by uninsured motorists, and in equally assessing the burden of that award to all culpable parties[.]" *Id.* Based on these interests, the court applied Louisiana law, then added that "[t]his conclusion is further buttressed by the recognition that Louisiana domiciliaries

---

**4.** The *Niemann* analysis tackled the dual issues of consent clauses and insurers' rights to subrogation clauses.

**5.** We do not find in the general description of Louisiana's motorist policies special concern for resident tortfeasors. For example, a representative description of state policy states simply:

In Louisiana, UM [uninsured motorist] coverage is provided for by statute and embodies a strong public policy. The object of the statute is to promote recovery of damages for inno-

cent automobile accident victims by making UM coverage available for their benefit as primary protection when the tortfeasor is without insurance, and as additional or excess coverage when he is inadequately insured. *Schwoch v. Sutor*, 559 So.2d 552, 553 (La.App. 1990) (citations omitted).

**6.** Subsequent cases apparently assumed these facts. *See, e.g., Powell v. Warner*, 398 So.2d 22, 23 (La.App.1981).

who are defendants in this case could be adversely affected by the Texas construction of the uninsured motorist provisions by limiting the fund from which plaintiffs['] claims are to be satisfied." *Id.*

Although the *Sutton* court articulated an interest in protecting a resident tortfeasor's ability to settle claims, later Louisiana authorities demonstrate that this policy does not apply in a case in which no Louisiana residents remain in the dispute, and in which the plaintiffs, their car, and their insurance policy are all connected solely to another state. In *Powell v. Warner*, 398 So.2d 22 (La.App.1981), for example, Louisiana's underinsured coverage law was not applied to a dispute between out-of-state plaintiffs and their out-of-state insurers. The *Powell* accident occurred in Louisiana. The tortfeasor, with whom the plaintiffs had settled by the time *Powell* was penned, was described as "an alleged resident of Louisiana." 398 So.2d at 23. Of controlling import to the court was that the vehicle in which the plaintiffs were riding was registered and garaged out of state, and the policy was "issued in and by a Mississippi agency under the provisions of Mississippi law to a Mississippi resident ... covering his vehicle which was registered and garaged in Mississippi." *Id.* The *Powell* decision mirrors the facts in the case at bar.

Further, we find illustrated in Louisiana authorities a reluctance on the part of the Louisiana courts to void contracts executed out of state between out-of-state parties on the sole basis of a fortuitous Louisiana accident situs. *See Powell; see also* discussion in *Richard v. Beacon National Insurance Co.*, 442 So.2d 875 (La.App. 1983) (interpreting a repealed version of La.R.S. 22:1406); *cf. Hanzo v. Liberty Mutual Insurance Co.*, 508 So.2d 928 (La.App. 1987) (discussing the inverse problem: out-of-state accident with Louisiana residents and policy); *Wilkins v. State*, 526 So.2d 308 (La.App.1988) (applying foreign state law to settlement contract confected in foreign state). Our observation is consistent with the discussion by the Louisiana Second Circuit Court of Appeal about its own precedent in *Sutton*. In *Jones v. American Fire–Indemnity Insurance Co.*, 442 So.2d 772 (La.App.1983), that circuit applied Louisiana law to a tort dispute and, in so doing, cited *Sutton.* The *Jones* court emphasized, however, that under the *Jones* facts the application of Louisiana law "should have been readily envisioned" because "the automobile in question was garaged, registered, and licensed in Louisiana." 442 So.2d at 774.

Today's holding is not inconsistent with our prior decisions in *Stickney v. Smith*, 693 F.2d 563 (5th Cir.1982), and *Bell v. State Farm Mutual Automobile Insurance Co.*, 680 F.2d 435 (5th Cir.1982). In *Stickney* and *Bell*, Louisiana law was applied to insurance policies issued out of state by out-of-state companies; however, in both cases, the drivers insured by these policies were living in, and the cars were garaged in, Louisiana at the time of the accidents at issue. The *Bell* court declared that:

> In the case of an insurance policy issued in one state on an automobile that within reasonable intention will be operated in interstate travel, the law of the forum state in which an accident occurs may be deemed to be the state in which the policy was intended to have effect and to have the most significant relationship in determining the application of a standard automobile liability policy, particularly where the vehicle is principally located in such other state.

680 F.2d at 436–37 (citations omitted). The subsequent *Stickney* decision elaborated on this rule. The *Stickney* court emphasized that because the insured driver was employed and living in Louisiana, "[i]t was reasonable to anticipate that he would be using Louisiana's highways for an extended period." 693 F.2d at 565. By contrast, in the case at bar, the plaintiffs were present in Louisiana for a brief visit only.

We agree with the district court conclusion that Louisiana law cannot control in a case in which no Louisiana residents are before the court, and in which the insurance policy invoked by the plaintiffs was issued out of state, to out-of-state residents, for an out-of-state car which was

licensed, registered, and garaged out of state at the time of the accident at issue.

AFFIRMED.