**David Leon DUGGER, M.D.**

v.

**UPLEDGER INST., et al.**

**Civ. A. No. 90–0829.**

United States District Court, E.D. Louisiana.

July 31, 1992.

Russell Allen Solomon, Susan DeJean Lavis, William Chad Stelly, Holoway, McQuaig, et al., Metairie, La., for David Leon Dugger, M.D.

H. Martin Hunley, Jr., David M. Whitaker, Lemle & Kelleher, New Orleans, La., Christine B. Roberts, William Winfield Stagg, Durio, McGoffin & Stagg, Lafayette, La., for Upledger Institute.

John Charles Tollefson, Steven H. Beadles, Knox, Beadles & Johnston, Dallas, Tex., for Merrimack Mut. Fire Ins. Co.

## ORDER AND REASONS

MENTZ, District Judge.

Before the Court is the Motion for Summary Judgment of defendant Merrimack Mutual Fire Ins. Co. Finding the motion to be warranted, the Court grants the same.

### I. *Facts*

Dr. David Leon Dugger has brought suit against the Upledger Institute and Dr. John E. Upledger[1] for negligent misrepresentation. He alleges the following facts. Sometime prior to January, 1988, Dr. Dugger received a brochure from the Institute, which brochure advertised a seminar on techniques of craniosacral therapy. Based upon the information contained in the brochure, Dr. Dugger attended such a seminar under the auspices of the Institute in Florida in January, 1988. Thereafter, Dr. Dugger used craniosacral therapy in his medical practice.

On April 13, 1988, the Louisiana Board of Medical Examiners notified Dr. Dugger that he was under investigation for his use of craniosacral therapy. Dr. Dugger ultimately underwent censure by the Board. Dr. Dugger brought this action against the Institute and its insurer, Merrimack Mutual Fire Ins. Co., alleging harm to his practice and his private life caused by the Institute's failure to inform him that there was medical controversy surrounding the use of craniosacral therapy. Merrimack Mutual seeks summary judgment on the grounds that the policy language does not cover the harm the Dr. Dugger alleges, and specifically excludes the conduct giving rise to the putative tort via its "professional services" disclaimer. In opposing the motion, the Institute and Dr. Dugger contend that the relevant conduct comes within the "advertising injury" coverage of the policy.

The policy excludes liability for " 'bodily injury' or 'property damage' due to rendering or failure to render any professional service." "Property damage" is defined as

a. Physical injury to tangible property, including all resulting loss of use of that property; or

b. Loss of use of tangible property that is not physically injured.

"Advertising injury" is defined as injury arising out of one or more of the following offenses:

a. Oral or written publication of material that slanders or libels a person or

1. Because their interests appear to be identical, this opinion will hereinafter refer to the Upledger Institute and Dr. John E. Upledger collectively as "The Institute".

organization or disparages a person's or organization's goods, products or services;

b. Oral or written publication of material that violates a person's right of privacy;

c. Misappropriation of advertising ideas or style of doing business; or

d. Infringement of copyright, title or slogan.

## II. *Law*

### A. *Choice of law*

▉ Of the three memoranda submitted to the Court on this motion, only Merrimack Mutual's refers to the conflict of laws problem presented by the dispute at bar. Merrimack Mutual's position is as follows:

"This policy was delivered in Florida to a Florida insured and the incident in question occurred in Florida. The alleged damage to the Plaintiff arose from the censure which occurred in Louisiana while he was a Louisiana resident. Plaintiff lived in Texas when suit was commenced. Despite the various jurisdictions involved, however, there is no

conflict between their jurisprudence [sic]. The law interpreting the exclusion is well-settled and does not vary among the states that have had the opportunity to interpret it, as will be seen. Under any of these states' laws, the result is the same: no coverage." [2]

The two parties opposing the motion have even less to say on this subject; apart from citing some law from jurisdictions outside Louisiana, they appear to ignore the matter entirely.[3]

▉ The Court cannot so blithely dismiss the conflicts question at hand, however.[4] A federal court whose subject matter jurisdiction is founded upon diversity of citizenship under 28 U.S.C. § 1332 is normally bound to apply the substantive law of the state in which it sits.[5] Likewise, "choice of substantive law is governed by the forum state's choice of law rules." *Allison v. ITE Imperial Corp.*, 928 F.2d 137, 138 (5th Cir.1991).[6] Because the parties have not drawn the Court's attention to any effective contractual choice of governing law,[7] an examination of Louisiana jurisprudence[8] governing conflicts in contract cases is warranted.

**2.** Memorandum in Support of Merrimack Mutual's Motion for Summary Judgment at 4 (emphasis omitted). After reviewing each of these states' jurisprudence, the Court finds significant, though not necessarily determinative, differences among them.

**3.** As a consequence, all parties have waived objection to the propriety of applying Louisiana law, rather than the law of Texas or Florida.

**4.** The choice of law inquiry begins with Louisiana law. As the following discussion will show, Louisiana employs governmental interest analysis to resolve the conflicts questions posed by this case. The Court finds this to be a dispute that Louisiana law regards as invoking the interests of not only the litigants, but of their states. The wisdom of this view is not before the Court. *See* Juenger, *Mass Disasters and the Conflict of laws*, 1989 U.Ill.L.Rev. 105, 112 (characterizing as "questionable" the "assumption that private litigation serves the purpose of vindicating governmental interests...."). A necessary corollary of this view is that the parties lack the power to choose governing law at this point in the proceedings. It is therefore necessary to determine which sovereign's interest is to be vindicated herein. Moreover, the Court deems

it appropriate to provide higher courts with a clear designation of governing law for the purpose of facilitating review.

**5.** *Erie R.R. Co. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *Guaranty Trust Co of New York v. York,* 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945).

**6.** *Accord Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941); *Day & Zimmerman, Inc. v. Challoner,* 423 U.S. 3, 96 S.Ct. 167, 46 L.Ed.2d 3 (1975) (per curiam).

**7.** Louisiana conflicts doctrine requires that a contractual choice of law clause be given effect " 'unless there is a statutory or jurisprudential law to the contrary justifying the refusal to honor the contract as written.' " *Delhomme Indus., Inc. v. Houston Beechcraft, Inc.,* 669 F.2d 1049, 1058 (5th Cir.1982), quoting *Associated Press v. Toledo Investments, Inc.,* 389 So.2d 752, 754 (La.App. 3d Cir.1980).

**8.** The Louisiana legislature recently added a comprehensive section governing conflict of laws to the Civil Code. See La.Civ.Code art. 3515 *et seq.* However, the Act applies only to actions filed after January 1, 1992. *See general-*

Louisiana employs an "interest analysis" that we have viewed in two steps.[9] First, a "governmental interest" analysis determines whether a false or true conflict exists. *Sandefer Oil & Gas, Inc. v. Aig Oil Rig, Inc.*, 846 F.2d 319 (5th Cir. 1988) (citing *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973) and B. Currie, *Selected Essays on the Conflict of Laws* (1963)). If only one state has an interest then a false conflict exists and the law of the solely interested jurisdiction controls. Alternatively, if two or more states have an interest, then the court reaches the second step of Louisiana's conflict of law analysis and applies the [*Restatement (Second) of Conflict of Laws*]'s "most significant relationship" approach.

*Gates v. Claret*, 945 F.2d 102, 104 (5th Cir.1991).[10] "If a state's relationship to the dispute is within the scope of the state's policy, then the state has a legitimate 'interest' in the application of its law to resolve the dispute. In a conflict between two states, if each state has such an interest, then a true conflict exists...." *Sandefer Oil & Gas, Inc. v. AIG Oil Rig, of Texas, Inc.*, 846 F.2d 319, 322 (5th Cir. 1988). Because this case deals with a Florida insured's putatively tortious conduct with respect to a Louisiana resident harmed within the state, both Florida and Louisiana have an interest in applying its law to that conduct, as well as to the interpretation of a contract of insurance that may affect the compensation of the plaintiff and the ultimate liability of the defendant. *See Baker v. Lazarus*, 1992 WL 111188, *4 (E.D. La.1992) (Clement, J.);[11] *Breland v. Schilling*, 550 So.2d 609 (La. 1989).[12] The situation at bar is therefore a "true conflict", and recourse to the "most significant relationship" approach of the *Restatement (Second) of Conflict of Laws* is necessary.

■ Section 193 of the Restatement reads in pertinent part as follows:

The validity of a contract of [casualty insurance] and the rights created thereby are determined by the local law of the state which the parties understood was to be the principal location of the insured risk during the term of the policy, unless with respect to the particular issue, some other state has a more significant relationship ... to the transaction and the parties, in which event the local law of the other state will be applied.[13]

Here, the "principal location of the insured risk" is appears to be Florida, the location of the Institute whose liability policy is at

---

ly Passler, *Comparative Impairment: Louisiana's New Methodology for Resolving Conflicts of Law*, 52 La.L.Rev. 409 (1991).

9. Original footnote: "The interest analysis is a jurisprudential creation, see *Jagers v. Royal Indemnity Co.*, 276 So.2d 309 (La.1973), notwithstanding the *lex loci delicti* principle described in Louisiana Civil Code article 15. Article 15 is not 'applied literally' because it 'begs the question.' *Sandefer Oil & Gas, Inc. v. AIG Oil Rig, Inc.*, 846 F.2d 319, 321 (5th Cir.1988) (explaining that the article's discussion of 'effects of acts' leaves open to the judiciary the question of when a contract has effect in Louisiana)".

10. *See also Fallon v. Superior Chaircraft Corp.*, 884 F.2d 229, 231 (5th Cir.1989) (characterizing Louisiana's approach to such problems as "a hybrid of Professor Brainerd Currie's governmental interest analysis theory and the Restate (Second) of Conflict of Laws 'most significant relationship' test.").

11. *See also id.* at *5 ("A powerful argument can be made that benefits from the insurance pool should be determined by the victim's law rather

than that of the insured, the insurer, or their relationship") (citation omitted).

12. *See also Baker v. Lazarus*, 1992 WL 111188, *4 (E.D.La.1992) (Louisiana has an established policy of "regulating awards to tort victims in the state, and in protecting persons in Louisiana from damage caused by underinsured tortfeasors. *Gates* [*v. Claret*], 945 F.2d [102] at 105–06 (citing *Sutton* [*v. Langley*, 330 So.2d 321] at 328 [ (La.App. 2d Cir.), *writs denied*, 332 So.2d 805, 820, 333 So.2d 242 (La.1976) ]); *Willett v. National Fire and Marine Ins. Co.*, 594 So.2d 966, 969–70 (La.App. 3d Cir.1992).").

13. A reference to the contacts listed in § 6 of the Restatement, to which § 188 would normally direct the Court on this point, is deleted pursuant to the jurisprudence of Louisiana. "None of the Louisiana courts applying the interest analysis to insurance coverage issues have even mentioned the Restatement § 188 contacts. Instead, they have simply balanced the interests of Louisiana and the state of the insurance contract to determine which state had more significant interests in the matter." *Baker v. Lazarus*, 1992 WL 111188, *5 (E.D.La.1992)

issue. Thus, the question for the Court is whether Louisiana law views Louisiana's relationship to the transaction and the parties as the more significant "where there is a foreign insured tortfeasor and a Louisiana victim plaintiff." *Baker v. Lazarus*, 1992 WL 111188, *8 (E.D.La.1992). It appears to the Court that there is strong support in Louisiana jurisprudence for holding that it does. *See id.* at *4–*8 (collecting cases). Accordingly, the Court finds that Louisiana law governs the insurance coverage issue that is now at bar.

### B. *"Professional Services"*

■ As the Institute correctly notes, the professional service exclusion does not apply to the advertising injury coverage.[14] Rather, it simply excludes " 'bodily injury' or 'property damage' due to rendering or failure to render any professional service." "Property damage" is defined as "a. Physical injury to tangible property, including all resulting loss of use of that property; or b. Loss of use of tangible property that is not physically injured." Thus, Dr. Dugger's injury could only fall within this exclusion if it were characterized as "bodily injury" or "property damage". His complaint cannot be fairly read to allege the former. With regard to the latter, a colorable argument exists that he has a proprietary interest in his professional reputation, but that interest cannot be said to lie in *"tangible"* property. Accordingly, the "professional services" exclusion is inapplicable to the matter at hand.[15]

### C. *"Advertising injury"*

■ Research has revealed no Louisiana jurisprudence defining the scope of this term in the relevant factual setting. In *Sam Z. Scandaliato & Associates, Inc. v. First Eastern Bank & Trust Co.*, 589 So.2d 1196 (La.App. 4th Cir.1991), for example, the court ruled that advertising injury included defamation, but held that an exclusion not at issue in this matter prevented coverage. Admittedly, defamation would be covered were it at issue here; the plain language of the policy indicates as much. However, the Court finds it extremely difficult to read coverage of negligent misrepresentation into the clear language of the definition of advertising injury.[16]

■ Dr. Dugger correctly claims that ambiguities in insurance policies should be construed in favor of the insured. *Praeti v. Sentry Indem. Co.*, 536 So.2d 417 (La. 1988). However, the prerequisite to such construction is a threshold finding of ambiguity. It is inappropriate to construe the policy in the insured's favor

> when the terms of the contract are clear or when the common intention of the parties can be ascertained by examination of the disputed terms in the context of the entire policy or by application of other principles of contract interpretation. The jurisprudence cautions against the alteration of the terms of policies 'under the guise of interpretation when they are couched in unambiguous language.

W. McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise, *Insurance Law and Practice* § 4 at 8 (1986).[17] The

---

**14.** Memorandum of Upledger Institute at 9.

**15.** The parties devote the majority of their briefs to the question whether the instruction given at the Institute constituted "professional services". Because medical instruction requires specialized knowledge, it appears that the instruction fits the prevailing legal definition of that term. *See* W. McKenzie & H. Alston Johnson, III, 15 Louisiana Civil Law Treatise, *Insurance Law and Practice* § 201 at 361–64 (1986); Taylor, *Duke University v. St. Paul Fire & Marine Ins. Co.: The Court of Appeals Brings Ambiguity to the Interpretation of "Professional Services",* 69 N.C.L.Rev. 1644 (1991). *See generally* 12 Couch

on Insurance § 44A:123 at 170–73 (2d ed. 1981) (collecting cases). Because it is not necessary to decide the point in order to resolve the motion at bar, however, the Court advances no ruling on this issue.

**16.** For a general treatment of the scope courts have given to "advertising injury" see Keville, *Advertising Injury Coverage: An Overview,* 65 S.Cal.L.Rev. 919 (1992).

**17.** *But see* La.Civ.Code art. 2056 ("In case of doubt that cannot be otherwise resolved, a provision in a contract must be interpreted against the party who furnished its text. A contract

Court finds no ambiguity in the definition of "advertising injury", and no justification for warping that term to apply to causes of action other than variations on the themes of defamation, invasion of privacy, and misappropriation of intellectual property.[18] Because Dr. Dugger's complaint cannot be fairly read to put forth such claims, the policy does not cover the injuries he has alleged. The motion for summary judgment of defendant Merrimack Mutual Fire Ins. Co. is therefore well taken.

Accordingly,

IT IS ORDERED that the motion for summary judgment of defendant Merrimack Mutual Fire Ins. Co. be and hereby is GRANTED.

---

executed in a standard form of one party must be interpreted, in case of doubt, in favor of the other party.").

**18.** Certain forms of unfair competition may also come within the definition of that term. *See* B. Ostrager & T. Newman, *Handbook on Insurance Coverage Disputes* 7.07[b] at 242–46 (4th ed. 1991); Zulkey, *Advertising Liability: What is the Required Nexus to Advertising?*, 59 Def.Couns.J. 80, 81–85 (1992). Apart from noting this possibility, the Court takes no position on the issue.